1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ETON MARCEL POPE,

                    Petitioner,

        v.

RON HAYNES,

                    Respondent.

CASE NO. 2:21-CV-00265-RAJ-DWC

REPORT AND RECOMMENDATION

Noting Date: February 18, 2022

The District Court has referred this action to United States Magistrate Judge David W. Christel. Petitioner Eton Marcel Pope, proceeding *pro se*, filed his federal habeas petition, pursuant to 28 U.S.C. § 2254, seeking relief from his state court conviction and sentence. *See* Dkt. 1, 18. The Court concludes the state court's adjudication of the grounds raised in the Second Amended Petition was not contrary to, or an unreasonable application of, clearly established federal law. Therefore, the undersigned recommends the Second Amended Petition be denied and a certificate of appealability not be issued.

1    **I.      Background**

2        A.  <u>Factual Background</u>

3        On March 9, 2015, in the Superior Court of Washington for King County ("trial court"), a

4  jury found Petitioner guilty of rape in the second degree – domestic violence and assault in the

5  second degree – domestic violence. *See* Dkt. 12-1 at 447. Petitioner was sentenced to 220 months

6  confinement on October 1, 2015. *See id*. at 447-52. The Court of Appeals of the State of

7  Washington ("state court of appeals") summarized the facts of Petitioner's case as follows:

8        The victim, ES, testified that she met the appellant, Eton Pope, in 1993, and they
dated for a brief period. In May 2013, ES and Pope ran into each other in downtown
9        Seattle. They started dating again. As the relationship progressed, Pope began
subjecting ES to verbal abuse. Sometimes he was physically aggressive towards
10      her, especially during sex. ES remained hopeful Pope would change and the
relationship could work.

11

12      On September 15, 2013, Pope and ES were together at her apartment. They got into
an argument. When ES refused to "be quiet," as Pope demanded, he grabbed her
13      by the neck, pushed her against the wall, and choked her. He eventually let go.
During a later conversation, Pope again demanded that ES "be quiet." She refused.
        Pope sat down on the couch next to ES and choked her until she fainted. When ES
14      regained consciousness, Pope was moving her from the couch to the floor. She
testified that Pope then raped her:

15

16      He sat me on the floor, and then what he did, he—somehow I was—I was—
had my robe on. It was a gray, terry cloth robe, and he—somehow—I don't
17      know where the belt was. I don't know if it came out of the—out of the belt
loops or not, but somehow he got the belt loop, and he wrapped it around
        my mouth, and at that point I knew something wasn't right. I knew this
18      wasn't right.

19      He put that belt loop around my mouth. He just wrapped it. And I started
shaking my head, because I knew that wasn't right. Whatever was getting
20      ready to happen, I knew it wasn't right.

21      ....

22      ... And he laid me down. He laid me down, and then he held—with his left
hand he held my hands above my head, and then he raped me.
23

        ES did not call the police that day.
24

Pope and ES did not see each other until the end of October, at which point they agreed to get back together. Pope soon resumed his verbal abuse of ES. They broke up around October 22, 2013. On October 23, ES called the police and reported the rape that occurred on September 15.

Pope was charged with one count of second degree assault by strangulation and one count of second degree rape. Both offenses were alleged to be crimes of domestic violence. The State later amended the charge by adding an aggravator for a history of domestic violence over a prolonged period of time, based on Pope's conduct towards ES as well as other women.

Pope represented himself during a bifurcated jury trial in March 2015. His defense was general denial or consent. A jury convicted him on both counts.

*State v. Pope*, 1 Wash. App. 2d 1034 (2017); Dkt. 12-1 at 617-19.

B. Procedural Background

    1. *Direct Appeal*

Petitioner challenged his conviction and sentence on direct appeal. *See* Dkt. 12-1 at 461-615. The state court of appeals affirmed Petitioner's convictions. *Id*. at 617-30. However, the state court of appeals reversed the sentence and remanded the case to the trial court to strike the reference to the aggravator from the judgment. *Id*. at 630. Petitioner sought discretionary review by the Washington State Supreme Court ("state supreme court"). *See id*. at 666-709. On May 2, 2018, the state supreme court denied Petitioner's petition for review without comment. *Id*. at 711. The state court of appeals issued its mandate on May 22, 2018. *Id*. at 713.

    2. *Personal Restraint Petition*

On April 17, 2019, Petitioner filed a personal restraint petition ("PRP") seeking state post-conviction relief. *See* Dkt. 12-2 at 2-7, 9-99. The state court of appeals dismissed the PRP on March 13, 2020. *Id*. at 182-91. Petitioner sought discretionary review from the state supreme court, which was denied by the commissioner of the state supreme court on October 27, 2020. Dkt. 12-3 at 2-7, 13-120, 122-25. Petitioner moved to modify the commissioner's decision. *Id*. at

127- 61. The state supreme court denied the motion to modify without comment and the state court of appeals issued the certificate of finality on March 12, 2021. *Id*. at 163, 165.

### 3. *Federal Petition*

On March 1, 2021, Petitioner initiated this case. Dkt. 1. In his Second Amended Petition (Dkt. 18), Petitioner raised the following eight grounds for relief:

1. The prosecutor engaged in misconduct when she introduced the victim's perjured testimony depriving Petitioner of his due process right to a fair trial.
2. The prosecution failed to disclose exculpatory evidence violating Petitioner's due process right to a fair trial.
3. The prosecutor engaged in misconduct when she elicited evidence of an uncharged crime and emphasized it in illustrative Exhibit 7, which went to the jury in deliberations, violating Petitioner's due process right to a fair trial.
4. The prosecutor engaged in misconduct during closing arguments violating Petitioner's due process right to a fair trial.
5. Ineffective assistance of appellate counsel for failing to raise an insufficient evidence argument.
6. Ineffective assistance of appellate counsel for failing to assert the trial court erred when it did not conduct the 4-step analysis for admission of Evidence Rule 404(b) prior bad acts evidence.
7. Ineffective assistance of appellate counsel for failing to assert the State impermissibly commented in closing argument on [Petitioner's] right to remain silent.
8. The cumulative errors by the trial court denied Petitioner his constitutional right to due process and a fair trial.

Dkt. 18. On October 20, 2021, Respondent filed, and served on Petitioner, an Answer to the Second Amended Petition. Dkt. 22. In the Answer, Respondent asserts the state court's adjudication of the grounds raised in the Second Amended Petition was not contrary to, or an unreasonable application of, clearly established federal law. *Id*. Petitioner filed a traverse on December 13, 2021. Dkt. 27-1.

## II.    Discussion

Respondent maintains the state courts' adjudication of the grounds raised in the Second Amended Petition was not contrary to, or an unreasonable application of, clearly established federal law. Dkt. 22.

A. <u>Standard of Review</u>

Pursuant to 28 U.S.C. § 2254(d)(1), a federal court may not grant habeas relief on the basis of a claim adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." In interpreting this portion of the federal habeas rules, the Supreme Court has ruled a state decision is "contrary to" clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An unreasonable application of Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court decision involves an unreasonable application of Supreme Court precedent "'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Williams*, 529 U.S. at 407).

1    The Anti-Terrorism Effective Death Penalty Act ("AEDPA") requires federal habeas

2    courts to presume the correctness of state courts' factual findings unless applicants rebut this

3    presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Further, review of

4    state court decisions under §2254(d)(1) is "limited to the record that was before the state court

5    that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

6    B. Prosecutorial Misconduct (Grounds 1 – 4)

7    Petitioner contends the State engaged in prosecutorial misconduct when the prosecutor:

8    (1) introduced the victim's perjured testimony (Ground 1); (2) failed to disclose exculpatory

9    evidence (Ground 2); (3) elicited evidence of an uncharged crime and emphasized it in

10   illustrative Exhibit 7, which went to the jury for deliberations (Ground 3); and (4) engaged in

11   misconduct during her closing arguments (Ground 4).

12   In determining if a prosecutor's conduct rises to the level of prosecutorial misconduct, the

13   relevant inquiry is whether the prosecutor's conduct "so infected the trial with unfairness as to

14   make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168,

15   181 (1986); *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (per curiam) (*Darden* standard is

16   "clearly established Federal law" for purposes of 28 U.S.C. § 2254(d)). A trial error is presumed

17   to be harmless unless the error had "substantial or injurious effect or influence in determining the

18   jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). It is the petitioner's burden to

19   state facts that point to a real possibility of constitutional error in this regard. *See O'Bremski v.*

20   *Maass*, 915 F.2d 418, 420 (9th Cir. 1990). [1]

21

22

23   ───────────

     [1] Although Supreme Court precedent provides the only relevant source of clearly established federal law
     for AEDPA purposes, circuit precedent can be "persuasive authority for purposes of determining whether particular
     state court decision is an 'unreasonable application' of Supreme court law," and in ascertaining "what law is 'clearly

24   established.'" *Duhaime v. Ducharme*, 200 F.3d 597, 600–01 (9th Cir. 2000).

To determine if a due process violation occurred, the court "must consider the probable effect of the prosecutor's [comments] on the jury's ability to judge the evidence fairly." *United States v. Young*, 470 U.S. 1, 12 (1985). To do so, the prosecutor's remarks must be viewed in context. *See Boyde v. California,* 494 U.S. 370, 385 (1990); *United States v. Robinson,* 485 U.S. 25, 33–34 (1988); *Williams v. Borg,* 139 F.3d 737, 745 (9th Cir.1998). The Court may consider whether the prosecutor's comments manipulated or misstated the evidence, whether the trial court gave a curative instruction, and the weight of the evidence against the accused. *Darden*, 477 U.S. at 181–82.

1.   *Grounds 1-3*

In Grounds 1 – 3, Petitioner alleges the prosecutor engaged in misconduct related to evidence regarding non-consensual sex between Petitioner and the victim, E.S., that occurred on October 20, 2013. *See* Dkt. 18, 29. As stated above, Petitioner was charged with and convicted of second degree rape arising from a September 15, 2013 incident. *See* Dkt. 12-1 at 617-19. Evidence showed that Petitioner also had nonconsensual sex with E.S. on October 20, 2013. Dkt. 12-1 at 161-68, 203-04. Petitioner was not charged with a rape arising from the October 20, 2013 incident.

i.   Perjured Testimony (Ground 1)

In Ground 1, Petitioner alleges the prosecutor knowingly introduced E.S.'s perjured testimony when she allowed E.S. to testify that Petitioner raped her a second time despite the prosecutor knowing E.S. had not been raped on October 20, 2013. *See* Dkt. 18, 29. "[A] conviction obtained by knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *U.S. v. Agurs*, 427 U.S 97, 103 (1975) (footnotes omitted); *Giglio v. U.S.*,

1   405 U.S. 150, 153 (1972). "[T]he knowing use of false testimony to obtain a conviction violates

2   due process regardless of whether the prosecutor solicited the false testimony or merely allowed

3   it to go uncorrected when it appeared." *U.S. v. Bagley*, 473 U.S. 667, 679 n.8 (1985); *Napue v.*

4   *People of State of Ill.*, 360 U.S. 264, 269 (1959). To prevail, "the petitioner must show that (1)

5   the testimony (or evidence) was actually false, (2) the prosecution knew or should have known

6   that the testimony [or evidence] was actually false, and (3) that the false testimony [or evidence]

7   was material." *United States v. Zuno–Arce*, 339 F.3d 886, 889 (9th Cir. 2003).

8          However, mere inconsistencies in the evidence do not constitute the knowing use of

9   perjured testimony by the prosecutor. *U.S. v. Zuno-Arce*, 44 F.3d 1420, 1423 (9th Cir. 1995).

10  "The fact that a witness may have made an earlier inconsistent statement, or that other witnesses

11  have conflicting recollections of events, does not establish that the testimony offered at trial was

12  false." *U.S. v. Croft*, 124 F.3d 1109, 1119 (9th Cir. 1997). "Discrepancies in . . . testimony . . .

13  could as easily flow from errors in recollection as from lies." *Zuno-Arce*, 44 F.3d at 1423.

14  "Petitioner must point to something in the prosecutor's questioning, or the answers given, that

15  may be construed as reflecting an intention by the prosecutor to mislead the jury." *Gomez v.*

16  *Adams*, 555 F.Supp.2d 1070, 1091 (C.D. Cal. 2008) (*citing U.S. v. Etsitty*, 130 F.3d 420, 424

17  (9th Cir. 1997)).

18         Petitioner asserts the prosecutor knowingly introduced E.S.'s perjured statements. Dkt.

19  18, 29. The record contains several different reports related to the October 20, 2013 incident.

20  Petitioner contends these reports contradict E.S.'s trial testimony and the prosecutor allowed E.S.

21  to commit perjury. Dkt. 18, 29. The state court of appeals summarily concluded that the record

22  did not support Petitioner's claim that the prosecutor engaged in misconduct by knowingly

23  eliciting false testimony from E.S. Dkt. 12-1 at 629.

24

1    The record shows that, on November 13, 2013, E.S. was interviewed by Detective Angie

2  Galetti. Dkt. 25-1 at 5-21. During the interview, E.S. stated she went to Petitioner's home on

3  October 20, 2013 to watch a football game with Petitioner. *Id*. at 5. While E.S. was at

4  Petitioner's home, Petitioner began to try to have sex with her. Dkt. 25-1 at 8. E.S. stated that she

5  told Petitioner no, but she did not "put[] up much of a struggle" and was "fearful of what could

6  happen." *Id*. E.S. told Petitioner she did not want to have sex, but thought of the September 15

7  incident and she "did give in." *Id* at 8-10.

8    A March 31, 2014 police report created by P.J. Lyons states E.S. tried to refuse

9  Petitioner's sexual advances, but she became afraid because Petitioner had previously been

10  physically violent. Dkt. 25 at 7. E.S. reported Petitioner "took her into his bedroom and forced

11  himself on her and raped her." *Id*. The portion of the report in the record does not contain the

12  date of this incident. *See id*. The police report was not signed by E.S.

13    In a Certification for Determination of Probable Cause dated April 2, 2014, Detective

14  Galetti declared E.S. told Detective Galetti that E.S. went to Petitioner's apartment on October

15  20, 2013. Dkt. 25-1 at 24. Petitioner made sexual advances toward E.S. and E.S. stated that she

16  initially told Petitioner "no" to his sexual advances, but she did "give in" and they had sex. *Id*.

17  E.S. explained to Detective Galetti that she did not want to have sex with Petitioner at the time.

18  *Id*. Detective Galetti reported that E.S. stated she had consensual sex with Petitioner later that

19  same day. *Id*.

20    During an interview on October 18, 2014, E.S. stated that she had sex with Petitioner

21  twice on October 20, 2013. Dkt. 25-1 at 31-32. The first time was not consensual, but the second

22  time was consensual. *Id*.

23

24

1    At trial, E.S. testified that, on October 20, 2013, Petitioner raped her a second time. Dkt.

2    12-1 at 161-68, 203-04. E.S. stated she went to Petitioner's home and, while there, Petitioner

3    stated that he was going to seduce her. *Id*. at 165-66. E.S. testified that she told Petitioner "no"

4    and that she did not want to have sex. *Id*. E.S. said she did not resist much because she was

5    fearful based on the September incident. *Id*. at 167.

6    A review of the record shows E.S.'s statements regarding the October 20, 2013 incident

7    remained consistent. She consistently stated she had non-consensual sex with Petitioner on one

8    occasion on October 20, 2013. Therefore, the testimony was not actually false. Further, there is

9    nothing in the questions asked by the prosecutor or the answers provided by E.S. that could be

10   construed as the prosecutor attempting to mislead the jury. Any perceived inconsistencies in the

11   trial testimony do not, alone, show the prosecutor knowingly used or allowed perjured testimony.

12   *See Hein v. Sullivan*, 601 F.3d 897, 911-12 (9th Cir. 2010) (rejecting *Napue* claim where the

13   petitioner was unable to prove the prosecution's witness had testified falsely). Therefore,

14   Petitioner failed to demonstrate the state court's conclusion that the prosecutor did not allow

15   perjured testimony was contrary to, or an unreasonable application of, clearly established federal

16   law. Accordingly, Ground 1 should be denied.

17   ii.    Brady Violation (Ground 2)

18   In Ground 2, Petitioner alleges the prosecution failed to disclose exculpatory evidence

19   violating Petitioner's due process right to a fair trial. Dkt. 18, 29. Specifically, Petitioner asserts

20   the State did not reveal testimony provided by E.S. related to the October 20, 2013 incident was

21   false. Dkt. 18 at 7.

22   A prosecutor has an affirmative duty to disclose evidence favorable to a defendant. *Kyles v.*

23   *Whitley*, 514 U.S. 419, 432 (1995). In *Brady*, the Supreme Court held "the suppression by the

24

1   prosecution of evidence favorable to an accused upon request violates due process where the

2   evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of

3   the prosecution." 373 U.S. at 87. "There are three components of a *Brady* violation: 'The evidence

4   at issue must be favorable to the accused, either because it is exculpatory, or because it is

5   impeaching; that evidence must have been suppressed by the State, either willfully or

6   inadvertently; and prejudice must have ensued.'" *United States v. Price*, 566 F.3d 900, 907 (9th

7   Cir. 2009) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

8          To determine if the suppressed evidence is material, "the question is whether admission of

9   the suppressed evidence would have created a reasonable probability of a different result, so the

10  defendant must show only that the government's evidentiary suppression undermines confidence

11  in the outcome of the trial." *United States v. Stinson*, 647 F.3d 1196, 1208 (9th Cir. 2011), *as*

12  *amended* (citation and internal quotation marks omitted). "To determine whether prejudice exists,

13  we look to the materiality of the suppressed evidence." *Id.* The duty to disclose is limited to

14  material evidence favorable to the defense which is deemed to be in the prosecutor's possession,

15  custody, or control. *Kyles*, 514 U.S. at 437-38. However, "the prosecutor's duty to disclose under

16  *Brady* is limited to evidence a reasonable prosecutor would perceive at the time as being material

17  and favorable to the defense. *Woods v. Sinclair*, 764 F.3d 1109, 1127 (9th Cir. 2014).

18         The state court of appeals summarily concluded that the record did not support

19  Petitioner's claim that the prosecutor engaged in misconduct. Dkt. 12-1 at 629.

20         It is unclear what evidence Petitioner believes was withheld. *See* Dkt. 29 at 13-16.

21  Petitioner appears to assert Detective Galetti's probable cause statement contradicts E.S.'s

22  testimony. *Id*. However, Petitioner has not shown the State failed to disclose the probable cause

23  statement (or any other evidence). In fact, Petitioner used the probable cause statement at trial.

24

1   *See e.g.* Dkt. 12-1 at 202 (questioning E.S. and stating he has the "statement of probable cause

2   right in front of me"). Therefore, Petitioner has not shown the State failed to disclose any

3   evidence that undermines confidence in the outcome of the trial. *See United States v. Motta*,

4   2012 WL 4633899, at *2 (D. Haw. Oct. 1, 2012) ("information already known to the defense (or

5   that could have been determined through reasonable diligence) does not constitute *Brady*

6   information that the Government must disclose.").

7       It appears Petitioner is actually asserting the prosecutor's failure to elicit different

8   testimony from E.S. or correct E.S.'s alleged false testimony at trial violated *Brady*. *See* Dkt. 18,

9   29. The record fails to show E.S. provided false testimony at trial or that the prosecution knew or

10  elicited false testimony. *See* Section II.B.i, *supra*. Petitioner states the probable cause statement

11  shows a second rape did not occur on October 20, 2013. Dkt. 29 at 16. The probable cause

12  statement is Detective Galetti's statement of investigation and contains a narrative of the events

13  that occurred on October 20, 2013 as reported by E.S. *See* Dkt. 25-1 at 24. The probable cause

14  statement is not E.S.'s sworn statement and, thus, cannot be used to show E.S. made inconsistent

15  statements. The probable cause statement does not identify the event on October 20, 2013 as a

16  rape, but it also does not state E.S. identified the sexual encounter as consensual. *Id.* At trial, E.S.

17  testified that she had non-consensual sex with Petitioner on October 20, 2013 and later that same

18  day also had consensual sex with Petitioner. Petitioner fails to identify any inconsistent

19  statements between the statement of probable cause and E.S.'s testimony at trial.

20      Petitioner has not shown the State failed to disclose exculpatory evidence or that there is

21  evidence E.S.'s statements were false. *See Runningeagle v. Ryan*, 686 F.3d 758, 769 (9th Cir.

22  2012) ("[T]o state a *Brady* claim, [petitioner] is required to do more than 'merely speculate'");

23  *Downs v. Hoyt*, 232 F.3d 1031, 1037 (9th Cir. 2000) (rejecting a *Brady* claim, in part, because the

24

1    petitioner's arguments were speculative). Therefore, Petitioner has not shown the state court's

2    determination that Petitioner failed to show a *Brady* violation was contrary to, or an

3    unreasonable application of, clearly established federal law. Accordingly, Ground 2 should be

4    denied.

5           iii.    Evidence of Uncharged Crime (Ground 3)

6           In Ground 3, Petitioner alleges the State committed prosecutorial misconduct when the

7    prosecutor elicited evidence of an uncharged crime and emphasized it in Exhibit 7. Dkt. 18, 29.

8    Respondent argues this is a state law error and not cognizable under § 2254. Dkt. 22.

9           The Court does not "review questions of state evidence law. On federal habeas [the

10   Court] may only consider whether the petitioner's conviction violated constitutional norms."

11   *Jammal v. Van de Kamp*, 926 F.3d 918, 919 (9th Cir. 1991); *Estelle v. McGuire*, 502 U.S. 62, 67-

12   68 (1991) ("it is not the province of a federal habeas court to reexamine state-court

13   determinations on state law questions"). "[F]ailure to comply with the state's rules of evidence is

14   neither a necessary nor a sufficient basis for granting habeas relief." *Id.*; *Marshall v. Longberger*,

15   459 U.S. 422, 438 n. 6 (1983) (citing *Spencer v. Texas*, 385 U.S. 554, 564 (1967)) ("the Due

16   Process Clause does not permit the federal courts to engage in a finely-tuned review of the

17   wisdom of state evidentiary rules: 'It has never been thought that [decisions under the Due

18   Process Clause] establish this Court as a rule-making organ for the promulgation of state rules of

19   criminal procedure.'"). "While adherence to state evidentiary rules suggests that the trial was

20   conducted in a procedurally fair manner, it is certainly possible to have a fair trial even when

21   state standards are violated; conversely, state procedural and evidentiary rules may countenance

22   processes that do not comport with fundamental fairness." *Jammal*, 926 F.2d at 919.

23

24

1    Accordingly, the issue before the Court is whether the trial court committed an error

2    which rendered the trial so arbitrary and fundamentally unfair that it violated due process. *Id.*;

3    *Reiger v. Christensen*, 789 F.2d 1425, 1430 (9th Cir. 1986). "Under AEDPA, even clearly

4    erroneous admissions of evidence that render a trial fundamentally unfair may not permit the

5    grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as laid

6    out by the Supreme Court." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (*citing*

7    28 U.S.C. § 2254(d)). Thus, if there is no clearly established federal law as determined by the

8    Supreme Court, habeas relief is barred even if the state court erroneously admitted irrelevant or

9    prejudicial evidence. *Id.* (citing *Carey v. Musladin*, 549 U.S. 70, 77 (2006)).

10    To succeed on Ground 3, Petitioner must show the trial court's decision to allow

11    evidence related the October 20, 2013 incident was so arbitrary and fundamentally unfair that it

12    violated due process. *See Jammal*, 926 F.2d at 919. At trial, the prosecution presented evidence

13    that Petitioner engaged in non-consensual sex with E.S. on October 20, 2013. Detective Galetti

14    testified on direct examination that there was an incident in October where E.S. "had given in to

15    [Petitioner's] advances after saying, no, didn't want to participate, but gave in." Dkt. 12-1 at 45-

16    46. During cross-examination, Detective Galetti testified that E.S. reported "she said no

17    regarding wanting to have sex, she gave in, even though there was no physical violence involved

18    at that time." *Id.* at 52. Petitioner also called Detective Galetti as a witness and asked if the

19    information in the probable cause statement regarding the October 20, 20213 incident showed

20    E.S. was raped. *Id.* at 331-32. Detective Galetti testified Petitioner raped E.S. on October 20,

21    2013. *Id.* at 332. E.S. also created a timeline of events on a whiteboard for the jury and identified

22    one sexual encounter on October 20, 2013 as the "2nd rape." *Id.* at 266-74; Dkt. 12-2 at 70. The

23

24

1  timeline was marked as State's Exhibit 7 and admitted into evidence. Dkt. 12-1 at 274-75.

2  Petitioner was not charged with rape related to the October 20, 2013 incident.

3          There was ample evidence to convict Petitioner of the second degree rape that occurred

4  on September 15, 2013. *See generally* Dkt. 12-1. Additionally, the trial court allowed testimony

5  related to Petitioner's violent and abusive behavior toward E.S. For example, the jury heard

6  testimony that, on occasions separate from the charged rape, Petitioner held E.S. down and

7  pushed her face into the mattress so E.S. could not breathe, strangled E.S., and verbally abused

8  E.S. *See* Dkt. 12-1 at 96, 98-99, 114-15, 144. In light of the evidence presented at trial, Petitioner

9  has not shown evidence about one additional incident where E.S. identified nonviolent, non-

10  consensual sex as a "2nd rape" resulted in the trial being so arbitrary and fundamentally unfair

11  that it violated due process.

12          Further, Petitioner did not object to testimony regarding the October 20, 2013 incident.

13  And, he solicited testimony from witnesses regarding the events that took place that day. For

14  example, Petitioner asked Detective Galetti if the October 20, 2013 incident was a rape. Dkt. 12-

15  1 at 331-32. Detective Galetti testified that Petitioner raped E.S. on October 20, 2013. *Id.* at 332.

16  Petitioner also did not object to Exhibit 7 stating a "2nd rape" occurred on October 20, 2013

17  being admitted as evidence. Dkt. 12-1 at 275, 400. Petitioner has not shown how the trial was so

18  arbitrary or fundamentally unfair that it violated his due process rights because evidence related

19  to the October 20, 2013 incident was introduced at trial. Further, Petitioner has not identified, nor

20  does the Court find, any clearly established federal law holding the evidence related to the October

21  20, 2013 incident was inadmissible in a state criminal trial. *See* Dkt. 18, 29.

22          A challenge to a state evidentiary rule is not a sufficient basis for granting federal habeas

23  relief. *See Mejia v. Garcia,* 534 F.3d 1036, 1046 (9th Cir.2008) (due process right concerning the

24

admission of propensity evidence is not clearly established as required by § 2254(d)); *Bugh v.*

*Mitchell*, 329 F.3d 496, 512–13 (6th Cir.2003) (state court decision allowing admission of

evidence pertaining to petitioner's alleged prior, uncharged acts of child molestation was not

contrary to clearly established Supreme Court precedent because there was no such precedent

holding that state violated due process by permitting propensity evidence in the form of other bad

acts evidence). Further, regardless of any alleged error in admitting evidence related to the October

20, 2013 incident, Petitioner has not shown his due process rights were violated when the evidence

was admitted at trial. *See Smith v. Foulk*, 2013 WL 5786606 at *10-13 (C.D. Cal. Oct. 28, 2013)

(finding the petitioner was not entitled to habeas relief even if the admission of uncharged acts was

unconstitutional because there was substantial evidence, beyond the evidence of the uncharged

acts, showing the petitioner's intent to cause pain and suffering).

Therefore, Petitioner has failed to demonstrate the state court's conclusion that the State did

not commit prosecutorial misconduct related to the October 20, 2013 incident was contrary to, or

an unreasonable application of, clearly established federal law. Accordingly, Ground 3 should be

denied.

2. *Ground 4*

In Ground 4, Petitioner asserts the prosecutor engaged in misconduct during her closing

arguments by misstating evidence and vouching for E.S. Dkt. 18, 29. Specifically, Petitioner

states the prosecutor misstated the evidence when she argued that (1) when Petitioner saw E.S. at

a bus stop he knew he could mold her and she would be the perfect victim and (2) Petitioner

required E.S. to remove the battery from her cell phone. Dkt. 18, 29. Petitioner contends the

prosecutor vouched for E.S.'s credibility by making the misstatements of evidence. Dkt. 18.

1    "Prosecutors have considerable leeway to strike 'hard blows' based on the evidence and

2    all reasonable inferences from the evidence." *United States v. Henderson*, 241 F.3d 638, 652 (9th

3    Cir. 2000); *see also United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993)

4    ("prosecutors must have reasonable latitude to fashion closing arguments, and thus can argue

5    reasonable inferences based on the evidence"), *as amended on denial of reh'g* (Apr. 15, 1993).

6    "A prosecutor may not, however, base closing argument on evidence not in the record." *U.S. v.*

7    *Sanchez-Soto*, 617 Fed. App'x. 695, 697 (9th Cir. 2015).

8    In determining the prosecutor did not commit prosecutorial misconduct when discussing

9    that Petitioner knew E.S. would be the perfect victim in closing arguments, the state court of

10    appeals determined:

11    [T]he prosecutor argued in closing that Pope "knew" ES "would become the perfect
12    victim":

13          [STATE:] When Eton Pope saw [ES] at that bus stop in May 2013, he knew.
          [POPE:] I object, Your Honor.
14          [STATE:] He knew that he—
          [COURT:] Overruled.
15          [STATE:] —could mold her, he knew that he could shape her, and he
          knew—
16          [POPE:] I object, Your Honor.
          [COURT:] Overruled.
17          [STATE:] —she would become the perfect victim. And we know he knew
           that because during that very first encounter he refused to give his last
           name.
18          [POPE:] I object. That's not into evidence, Your Honor.
          [COURT:] Overruled.
19          [STATE:] And that's likely because he knew what he had in store for her.
          And learn her, he did. He spent six weeks figuring out what [ES] was—
20          [POPE:] Objection.
          [COURT:] Overruled.
21          [POPE:] That's insinuation.
          [STATE:] Figuring out what she was desperate for, figuring out what she
22          was hoping for. And, when he finally figured out what she believed a perfect
          man was, he briefly became that man and then quickly turned into exactly
23          what she feared.
          [POPE:] I object, Your Honor.

24

1    [COURT:] Overruled.

2    [STATE:] Eton Pope played on [ES's] hope and desperation to slowly and
     methodically break her down, and, when he felt she was in the right place,
3    properly destroyed, he went a little further. And each time she forgave him,
     each time she felt sorry for him, and each time she felt that she could fix
     him, he gained a little more power.

4

5    Pope challenges this line of argument on the basis that it was inflammatory and
     unsupported by the evidence, like the argument that led to reversal in <u>Pierce.</u> In that
6    case, the prosecutor in rebuttal argument appealed to the jury's passion and
     prejudice "by asking it to place itself in the shoes of two victims of a brutal killing,"
7    by speculating on Pierce's thought process leading up to the crime, and by
     "fabricating an emotionally charged story of how the victims might have struggled
8    with Pierce and pleaded for mercy." <u>Pierce</u>, 169 Wn. App. at 537. The improper
     remarks "encouraged the jury to decide the case based on the prosecutor's heart-
9    wrenching, though essentially fabricated, tale of how the murders occurred."
     <u>Pierce</u>, 169 Wn. App. at 555.

10   The prosecutor's assertion that Pope knew ES would become the perfect victim is
     not analogous to the fabricated story challenged in <u>Pierce</u>. The record shows that
11   Pope did subject ES to a pattern of intimidation and aggression. ES testified "He
     kind of came in and just kind of broke me." It was not an unreasonable inference
12   from the evidence to describe Pope as calculating and manipulative.

13   *State v. Pope*, 1 Wash. App. 2d at 1034; Dkt. 12-1 at 626-27.

14       As the state court of appeals stated, during closing arguments the prosecutor referenced

15   Petitioner's decision to not provide E.S. with his last name when they first met and spoke of

16   E.S.'s desire for a lasting relationship. Dkt. 12-1 at 363-65. The prosecutor then argued that

17   Petitioner determined E.S. would make the perfect victim and took actions to gain power over

18   E.S. *See id*. The state court of appeals determined this was a reasonable inference from the

19   evidence presented at trial. *Id*. at 626-27.

20       During the trial, E.S. testified that, when Petitioner re-introduced himself after not seeing

21   E.S. for several years, Petitioner did not give E.S. his last name. Dkt. 12-1 at 67. At the time E.S.

22   began dating Petitioner, she had been wanting a relationship, "the last and final relationship that

23   she wanted to be in." *Id*. at 63. E.S. stated she wanted the relationship with Petitioner to work.

24

1   *See id*. at 80, 83, 88, 99. She also testified that she wanted to help him overcome his resentment

2   toward women and be the one "chosen" by Petitioner. *Id*. at 115-16. E.S. also testified Petitioner

3   "kind of came in and just kind of broke [her.]" Dkt. 12-1 at 99; *see also* Dkt. 12-1 at 116

4   (testimony that Petitioner stripped away E.S.'s emotional well-being). E.S. stated Petitioner

5   would tell her how low she was and that she was nothing. Dkt. 12-1 at 99. She also testified

6   "[Petitioner] had came (sic) into my life, and he broke me. He did. He broke me. And that's what

7   I believe. He came into my life with the intent to break me, because he said - - he said it." *Id*. at

8   131. As an example, E.S. explained that one time Petitioner told E.S. he could kill her and get

9   away with it. *Id*. at 132. When E.S. asked why Petitioner why he would say that, Petitioner

10  responded he wanted E.S. to know the power that he had. *Id*.

11        Based on the evidence presented at trial, it was reasonable for the prosecutor to argue

12  Petitioner intended to mold E.S. into the perfect victim and that he manipulated and controlled

13  her. Thus, the prosecutor argued reasonable inferences from the record and Petitioner has not

14  shown the prosecutor misstated the evidence regarding Petitioner knowing E.S. would be the

15  perfect victim. *United States v. Sayetsitty,* 107 F.3d 1405, 1409 (9th Cir.1997) (stating that

16  prosecutors may make reasonable inferences from the evidence presented at trial).Therefore,

17  Petitioner has failed to demonstrate the state court's conclusion that the State did not commit

18  prosecutorial misconduct during closing arguments regarding Petitioner viewing E.S. as the perfect

19  victim was contrary to, or an unreasonable application of, clearly established federal law.

20        Petitioner next argues the prosecutor misstated the evidence when she stated Petitioner

21  made E.S. take her phone battery out of her phone when they were together. In finding the

22  prosecutor did not commit prosecutorial misconduct when referencing the phone battery, the state

23  court of appeals stated:

24

. . . Pope argues that the prosecutor misled the jury by stating during closing argument that Pope forced ES to take the battery out of her phone.

The record shows that ES testified as follows:

The routine was that I was to put — no. Turn my phone off and put it away and don't be on it. What he would do, his phone --- with his phone, he would take the battery out, and he would take the battery out, put the back back on, and put it away. I just thought that was — I thought it was strange."

During closing, the prosecutor advanced the following two arguments:

And, if you were making it up, wouldn't you have questions like:  Why did you stay on the phone with him? Why did you agree to take the battery out your phone? Well, you saw on the stand she paused. She asked the question back to herself. Why did I take the battery out? Was I okay? If you were making it up, you'd have a ready explanation for that. It wouldn't be something you'd have to think about.

And she testified that that was going through her mind as his hands were wrapped around her throat: "Oh my God, he is going to kill me, and no one will ever know." Remember the battery was out of her cell phone, because that's what he required. No one would ever know.

It appears that the prosecutor misstated the evidence by asserting that Pope required ES to remove the battery from her phone. These statements were improper. However, reversal is not required unless Pope demonstrates prejudice.

Defense counsel did not object to the first battery reference, so to meet this standard Pope must establish that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" Emery, 174 Wn.2d at 760-61 (quoting State v. Thorgerson, 172 Wn.2d 438, 455, 258 P.3d 43 (2011). Defense counsel did object to the second battery argument, so to meet this standard Pope must show a substantial likelihood that the error affected the jury's verdict. Emery, 174 Wn.2d at 760. "In analyzing prejudice, we do not look at the comments in isolation, but in the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury." State v. Warren, 165 Wn.2d 17, 28, 195 P.3d 940 (2008).

Here, when viewed in context, the prosecutor's misstatements of ES's testimony do not create a substantial likelihood that the error affected the verdict. ES testified that Pope made her turn off her phone and put it away — a practice which had the same practical effect of depriving her of the use of her phone in his presence. Given ES's testimony against Pope regarding what occurred during the rape, and the prosecutor's otherwise proper arguments regarding ES's veracity, there was no

substantial likelihood that this argument affected the jury's decision. And a curative instruction could have cured any prejudice.

Dkt. 12-2 at 186-88.

As stated by the state court of appeals, E.S. testified regarding Petitioner's routine when he came to E.S.'s home. Dkt. 12-1 at 102. E.S. would turn her phone off and put it way – she was not to be on it. *Id*. Petitioner told E.S. he wanted her to turn her phone off so they would not be interrupted because it was their time together. *Id*. Petitioner would also take the battery out of his phone when he was with E.S. and told E.S. it was because he dated someone who was an IT expert and was stalking him. *Id*. During closing arguments, the prosecutor stated twice that E.S. had to take the battery out of her phone when she was with Petitioner. Dkt. 12-1 at 394-95, 397.

The evidence did not show Petitioner required E.S. to take the battery out of her phone. Rather, the evidence showed Petitioner required E.S. to turn her phone off and put it away when they were together. While this is a misstatement of the evidence, Petitioner's conclusory assertions that the two references to the battery being removed from E.S.'s phone substantially impacted the jury's assessment of Petitioner's guilt are insufficient. As discussed above, there was evidence that Petitioner required E.S. to turn her phone off when they were together, so her phone was not readily available to her while she was with Petitioner. Based on the record in this case, Petitioner has not shown the misstatements of evidence regarding E.S's phone battery infected the trial in such a way that Petitioner's conviction resulted in a denial of due process.

Petitioner has not provided facts sufficient to show a real possibility of constitutional error as a result of the State's alleged misconduct in misstating E.S.'s testimony regarding her phone battery during closing arguments. Therefore, Petitioner has failed to show the state court's conclusion denying Petitioner's prosecutorial misconduct claim regarding E.S.'s testimony about

1  her phone battery was contrary to, or an unreasonable application of, clearly established federal

2  law.

3       Finally, Petitioner asserts the prosecutor improperly vouched for E.S. Dkt. 18. In finding

4  the prosecutor did not vouch for E.S., the state court of appeals found on direct review:

5       . . . Pope contends that by describing ES as brave and courageous, the prosecutor
        improperly vouched for her credibility. We disagree. The remark is more
6       reasonably understood as an inference based on ES's demeanor on the stand.

7  Dkt. 12-1 at 628. Further, when denying Petitioner's PRP, the state court of appeals found:

8       Pope further argues that the prosecutor improperly vouched for ES's credibility and
        appealed to the jury's sympathy during closing argument by drawing the jury's
9       attention to ES's demeanor on the stand, describing her as brave and courageous,
        and arguing that "if she was making this up, wouldn't she make up a better story?"
10      These arguments were not improper. A prosecutor may comment on a witness's
        veracity so long as a personal opinion is not expressed and the comments are not
11      intended to incite the jury's passion. State v. Stith, 71 Wn. App. 14, 21, 856 P.2d
        415 (1993). Furthermore, this court rejected similar arguments in Pope's direct
12      appeal.

13  Dkt. 12-2 at 185-86.

14      "It is improper for the prosecution to vouch for the credibility of a government witness."

15  *United States v. Roberts*, 618 F.3d 503, 533 (9th Cir. 1980). "Vouching consists of placing the

16  prestige of the government behind a witness through personal assurances of the witness's

17  veracity, or suggesting that information not presented to the jury supports the witness's

18  testimony." *Necoechea*, 986 F.2d at 1276. "[P]rosecutors must have reasonable latitude to

19  fashion closing arguments, and thus can argue reasonable inferences based on the evidence,

20  including that one of the two sides is lying." *Id*.

21      Here, in her closing argument, the prosecutor argued E.S. was a credible witness based on

22  the evidence and how E.S. presented herself at trial. For example, the prosecutor stated:

23

24

1     Now, let's talk about credibility, and that's in jury instruction number 1. And when

2 you look at that instruction you'll see one of the factors that you are to look at is the manner in which someone testified on the stand.

3     And, ladies and gentlemen, we all saw the same thing. We saw that [E.S.] didn't appear vindictive and out to get the defendant. You saw her clenched hands, her

4 nervousness, and her tears, and you heard [E.S.] admit to things that weren't very favorable to her. So, ask yourself this: If [E.S.] was upset with the defendant

5 because he wanted to break up with her, if she was out to get the defendant, if she was making this up, wouldn't she make up a better story?

6     . . . .

7     You may believe that going back to speak to someone who has brutally raped and

8 strangled you is inconsistent with actually being raped and strangled. But I submit to you, ladies and gentlemen, that that inconsistency actually makes [E.S.] credible.

9     . . . .

10     With everything you heard, the phone conversations, the assaults, and the degrading

11 conversations, wouldn't [E.S.] going back to him actually be consistent with someone who had gone through all of that?

12 Dkt. 12-1 at 370-71. The prosecutor also stated:

13     [E.S] described to you how her boyfriend strangled her, how he raped her., and how

14 she was unbelievably broken. And you will never forget it, because it was compelling. It was real. It was credible. It is what happened. And, if you believe

15 her, her word is enough.

16 *Id.* at 372-3. Finally, the prosecutor stated E.S. was brave and courageous for testifying. *See id.*

17 at 375.

18     The evidence fails to show the prosecutor vouched for E.S. The prosecutor reasonably

19 argued from the evidence that E.S.'s testimony was believable based on her demeanor and

20 portions of her story that were not favorable to her. The prosecutor did not personally assure

21 E.S.'s veracity or suggest information not provided to the jury supported E.S.'s testimony.

22 Rather, the prosecutor argued the evidence and stated E.S. was truthful in light of the evidence

23 presented at trial. *See Necoechea*, 986 F.2d at 1279 ("It is not vouching, however, for the

24

REPORT AND RECOMMENDATION - 23

1    prosecutor to argue about the truthfulness of a witness's statements based upon evidence in the

2    record, provided that the statements do not imply that the prosecution is personally assuring the

3    witness's veracity or reflect the prosecutor's personal beliefs."). Therefore, Petitioner has failed

4    to show the state court's conclusion finding the prosecutor did not engage in misconduct by

5    allegedly vouching for E.S. was contrary to, or was an unreasonable application of, clearly

6    established federal law. Accordingly, Ground 4 should be denied.

7        3.  *Conclusion*

8        For the above stated reasons, the Court finds Petitioner has not shown the claims of

9    prosecutorial misconduct, viewed singularly or cumulatively, warrant habeas relief. Accordingly,

10   the Court finds Grounds 1 – 4 should be denied.

11   C.  Ineffective Assistance of Appellate Counsel (Grounds 5-7)

12       In Grounds 5 – 7, Petitioner alleges his appellate counsel was ineffective for failing, on

13   appeal, to: (1) raise an insufficiency of the evidence argument (Ground 5); (2) argue the trial

14   court erred when it failed to conduct the 4-step analysis for admission of Evidence Rule 404(b)

15   prior bad acts evidence (Ground 6); and (3) argue the State impermissibly commented in closing

16   argument on Petitioner's right to remain silent (Ground 7). Dkt. 18, 29.

17       Claims of ineffective assistance of counsel on appeal are reviewed under a deferential

18   standard similar to that established for trial counsel ineffectiveness in *Strickland*. *See Smith v.*

19   *Robbins*, 528 U.S. 259, 285 (2000); *Smith v. Murray*, 477 U.S. 527, 535 (1986). Under this

20   standard, a petitioner challenging his appellate counsel's performance must demonstrate (1)

21   counsel's performance was unreasonable, which in the appellate context requires a showing

22   counsel acted unreasonably in failing to discover and brief a meritorious issue, and (2) there is a

23   reasonable probability, but for counsel's failure to raise the issue, the petitioner would have

24

1    prevailed on his appeal. *Robbins*, 528 U.S. at 285–86; *see also Wildman v. Johnson*, 261 F.3d

2    832, 841–42 (9th Cir. 2001); *Morrison v. Estelle*, 981 F.2d 425, 427 (9th Cir. 1992), *cert. denied*,

3    508 U.S. 920 (1993); *Miller v. Keeney*, 882 F.2d 1428, 1433–34 (9th Cir. 1989).

4         The presumption of reasonableness is even stronger for appellate counsel because he has

5    wider discretion than trial counsel in weeding out weaker issues; doing so is widely recognized

6    as one of the hallmarks of effective appellate assistance. *Miller*, 882 F.2d at 1434. The exercise

7    of professional judgment in framing appellate issues makes it difficult to demonstrate counsel's

8    omission of a particular argument was deficient performance. *Robbins*, 528 U.S. at 288. Habeas

9    relief is unavailable on a claim of appellate-counsel ineffectiveness unless the state court's denial

10   of the claim "was so lacking in justification that there was an error well understood and

11   comprehended in existing law beyond any possibility for fair[-]minded disagreement."

12   *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

13       1.   *Ground 5*

14       In Ground 5, Petitioner alleges his appellate counsel provided ineffective assistance when

15   counsel failed to argue there was insufficient evidence to prove "forcible compulsion." Dkt. 18 at

16   16-17. Petitioner contends he presented sufficient evidence to show he and E.S. were in a

17   consensual sexual relationship at the time the charged rape occurred. *See* Dkt. 29 at 24-29. As

18   Petitioner presented sufficient evidence of consent, his counsel was ineffective for failing to raise

19   the insufficiency of evidence argument. *Id*.

20       In determining Petitioner's appellate counsel was not ineffective for failing to raise an

21   insufficiency of evidence argument, the state court of appeals stated:

22       Pope first argues appellate counsel was ineffective for failing to argue that the
         evidence was insufficient to support his conviction for rape in the second degree
23       because it does not show that he used "forcible compulsion" to engage in sexual
         intercourse with ES. A person is guilty of rape in the second degree "when, under

24

1    circumstances not constituting rape in the first degree, the person engages in sexual

2    intercourse with another person ... [b]y forcible compulsion." RCW
     9A.44.050(1)(a). "Forcible compulsion" is defined as "physical force which

3    overcomes resistance, or a threat, express or implied, that places a person in fear of
     death or physical injury to herself or himself or another person, or in fear that she

4    or he or another person will be kidnapped." RCW 9A.44.010(6).

5    Here, ES testified that Pope choked her until she fainted, and when she regained
     consciousness, he wrapped her bathrobe belt around her around her (sic) mouth,

6    held her hands above her head, and raped her. A rational trier of fact could infer
     from the evidence here that Pope exerted physical force to overcome resistance

7    from ES. Pope asserts that this testimony was negated by ES's testimony that she
     had a consensual sexual relationship with Pope prior to the alleged rape. But this

8    court "must defer to the trier of fact on issues involving conflicting testimony,
     credibility of the witnesses, and the persuasiveness of the evidence." State v.

9    Hernandez, 85 Wn. App. 672, 675, 935 P.2d 623 (1997). Because this claim lacks
     merit, appellate counsel was not ineffective for failing to raise it.

10   Dkt. 12-2 at 188-89.

11       The state court of appeals determined Petitioner's underlying insufficiency of evidence

12   claim lacked merit and, therefore, his appellate counsel was not ineffective for failing to raise the

13   claim. The Constitution forbids the criminal conviction of any person except upon proof of guilt

14   beyond a reasonable doubt. *In re Winship*, 397 U.S. 358 (1970). When evaluating a claim of

15   insufficiency of the evidence to support a conviction, the reviewing court must decide "whether,

16   after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact

17   could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v.*

18   *Virginia*, 443 U.S. 307, 319 (1979). "*Jackson* leaves juries broad discretion in deciding what

19   inferences to draw from the evidence presented at trial, requiring only that jurors 'draw

20   reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 132 S.Ct. 2060,

21   2064 (2012) (quoting *Jackson*, 443 U.S. at 419). The jury is entitled to believe the State's

22   evidence and to disbelieve the defense's evidence. *Wright v. West*, 505 U.S. 277, 296 (1992).

23

24

1    Petitioner was found guilty of second degree rape. Under Washington state law, a person

2  is guilty of rape in the second degree when, under circumstances not constituting rape in the first

3  degree, the person engages in sexual intercourse with another person: (a) by forcible compulsion.

4  RCW § 9A.44.050(1)(a). "'Forcible compulsion' means physical force which overcomes

5  resistance, or a threat, express or implied, that places a person in fear of death or physical injury

6  to herself . . . [.]"RCW 9A.44.010(3). "There can be no forcible compulsion when the victim

7  consents, as there is no resistance to overcome." *State v. Knapp*, 11 Wash. App. 2d 375, 381

8  (2019) (quoting *State v. W.R.*, 181 Wash.2d 757, 765 (2014)).

9    At trial, E.S. testified that on September 15, 2013, Petitioner strangled her until she was

10 unconscious. Dkt. 12-1 at 146-49. E.S. thought Petitioner was going to kill her. *Id*. at 149. E.S.

11 regained consciousness and Petitioner moved E.S. to the floor and wrapped a bathrobe belt

12 around her mouth. *Id*. at 151. E.S. testified she was shaking her head no; Petitioner held her arms

13 above her head and then engaged in sexual intercourse with E.S. *Id*. at 152. E.S. stated she did

14 not tell Petitioner she wanted to have sex with him at any point that day. *Id*. at 154. On cross-

15 examination, E.S. stated that she reported to the police she had consensual sex with Petitioner

16 from July to October. *Id*. at 234-35.

17    The evidence at trial was sufficient to show "forcible compulsion" because E.S. testified

18 Petitioner strangled her until she was unconscious, tied a belt around her mouth, and held her

19 down. E.S. also thought Petitioner was going to kill her. Petitioner relies on one statement from

20 E.S. where E.S. stated she was involved in a consensual sexual relationship with Petitioner when

21 the rape occurred. However, there is evidence E.S. did not consent to sexual intercourse with

22 Petitioner on September 15, 2013. Petitioner's underlying insufficiency of evidence claim

23 requires the Court to reweigh the evidence and draw different inferences than the jury; this is

24

1    impermissible. As such, the Court finds there was sufficient evidence for a rational jury to

2    conclude Petitioner committed the charged crime. *See Oliver v. Gower*, 2017 WL 11568171 at

3    *15 (N.D. Cal. March 24, 2017) (noting evidence of a victim's prior consensual sexual conduct

4    with the defendant is not relevant to show consent on a different occasion).

5         Petitioner has not shown his allegation that there was insufficient evidence to prove

6    "forcible compulsion" was meritorious. As such, Petitioner has not shown his appellate counsel

7    was ineffective for failing to raise this argument on appeal. Therefore, Petitioner has failed to

8    show the state court's conclusion finding appellate counsel was not ineffective for failing to raise

9    an insufficiency of evidence argument on appeal was contrary to, or an unreasonable application

10   of, clearly established federal law. Accordingly, Ground 5 should be denied.

11        2.   *Ground 6*

12        In Ground 6, Petitioner alleges his appellate counsel was ineffective for failing to assert,

13   on appeal, that the trial court erred when it did not conduct the 4-step analysis for admission of

14   Evidence Rule ("ER") 404(b) prior bad acts evidence. Dkt. 18 at 18. Petitioner asserts the trial

15   court, without conducting the 4- step analysis under ER 404(b), allowed evidence that Petitioner

16   (1) told E.S. he would kill her in May 2013, (2) held E.S. face-down on a mattress and shook her

17   on September 14, 2013, and (3) grabbed E.S. by the throat and thrust her against a wall on

18   September 15, 2013. *Id*. On appeal, Petitioner's appellate counsel challenged only the reasons

19   the trial court gave for admitting the evidence, not the trial court's process. *Id*.

20        In determining Petitioner's appellate counsel was not ineffective for failing to assert the

21   trial court erred when it did not conduct a 4-step analysis when admitting evidence under ER

22   404(b), the state court of appeals stated:

23        . . . Pope argues that the trial court erred in admitting evidence of prior acts of abuse
          by Pope against ES under ER 404(b) over Pope's objection. However, on direct

24

appeal, this court rejected Pope's challenge to admissibility of this evidence under ER 404(b). Pope now contends that court failed to properly conduct the required analysis on the record, but the record does not support his argument. Pope has not shown a reason to relitigate this claim.

Dkt. 12-2 at 190.

On appeal, Petitioner's appellate counsel alleged the trial court erred in admitting evidence of prior bad acts Petitioner allegedly committed against E.S. under ER 404(b). Dkt. 12-1 at 468. Petitioner's appellate counsel argued the trial court erred because the evidence was not admissible for the purposes the State advanced, the trial court admitted the evidence for purposes not advanced by the State, and the evidence was not admissible for the purposes the trial court advanced. *Id.* at 484-85. The state court of appeals rejected this claim, finding:

> The trial court agreed to admit evidence of prior acts of abuse by Pope against ES, over Pope's objection. Evidence was admitted of psychological abuse between May and September 2013, including a time when Pope threatened to kill ES and told her no one would be able to find her body; an incident in July 2013 when Pope shook ES's shoulders "really, really hard" because she was not performing oral sex the way he wanted; an incident in August 2013 when Pope threw ES onto a bed, straddled her, and pushed her face into the mattress until she could not breathe; and Pope's strangulation of ES on September 15, 2013, before he committed the strangulation and rape underlying the charges. The court found that the acts were admissible to explain the victim's delay in reporting and as proof of motive and intent. The court also found, as required, that the acts had been proven by a preponderance of the evidence and their probative value outweighed any prejudicial effect. State v. Gunderson, 181 Wn.2d 916, 923, 337 P.3d 1090 (2014).

> Pope assigns error to admission of the above evidence. Evidence of a defendant's prior misconduct is not admissible to show criminal propensity, but it may be admissible for other purposes. ER 404(b); State v. Woods, 198 Wn. App. 453, 458, 393 P.3d 886 (2017). We review for an abuse of discretion. Woods, 198 Wn. App. at 458.

> The evidence was properly admitted to explain ES's delay in reporting and, relatedly, her credibility. The record establishes that ES did not report the strangulation and rape that occurred on September 15, 2013, until more than a month later. Because her delay in reporting could be interpreted by the jury as inconsistent with her accusation of rape, the trial court had discretion to admit evidence that Pope had previously assaulted and threatened her. State v. Grant, 83 Wn. App. 98, 920 P.2d 609 (1996). A jury is entitled to evaluate the victim's

credibility "with full knowledge of the dynamics of a relationship marked by domestic violence and the effect such a relationship has on the victim." <u>Grant</u>. 83 Wn. App. at 108; <u>see also Woods</u>, 198 Wn. App. at 460 (evidence that the defendant previously promoted prostitution of the victim was relevant to jurors' understanding of the dynamics of their relationship). We find no abuse of discretion.

*State v. Pope*, 1 Wash. App. 2d at 1034; Dkt. 12-1 at 623-24.

Petitioner's counsel challenged the trial court's ER 404(b) ruling on appeal. Petitioner has not shown that, if appellate counsel would have challenged the trial court's process for reaching its ER 404(b) decision, the result of his appeal or collateral attack would have been different. For example, Petitioner has not shown the state court would have excluded the evidence and granted Petitioner a new trial had the claim been raised differently on direct appeal.

Petitioner's appellate counsel argued the trial court erred in its ER 404(b) ruling and Petitioner has not shown he was prejudiced by counsel's alleged failure to raise the ER 404(b) claim differently. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) (holding that an attorney need not advance every colorable argument on appeal). Therefore, Petitioner has not shown the state court's conclusion that appellate counsel did not render ineffective assistance by failing to challenge the trial court's process in making the ER 404(b) decision was contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Ground 6 should be denied.

3. *Ground 7*

In Ground 7, Petitioner contends his appellate counsel was ineffective when counsel failed to allege, on appeal, the State engaged in prosecutorial misconduct by commenting on Petitioner's right to remain silent during closing arguments. Dkt. 18 at 19. The state court of appeals determined Petitioner's appellate counsel was not ineffective for failing to raise this prosecutorial misconduct claim on appeal, stating:

1

2

3

4

5

6

7

8

  Pope next argues that appellate counsel was ineffective for failing to argue that the prosecutor committed misconduct by stating to the jury during rebuttal argument that there was "uncontradicted" testimony that ES was raped. However, the "mere mention that defense evidence is lacking does not constitute prosecutorial misconduct or shift the burden of proof to the defense." <u>State v. Jackson</u>, 150 Wn. App. 877, 885-86, 209 P.3d 553 (2009). Here, although the statement arguably touched upon the right to remain silent by suggesting that Pope had a duty to present evidence, the prosecutor did not explicitly state that Pope did not testify, and the jury was properly instructed that Pope was not required to testify and bore no burden of proof. <u>See</u> <u>State v. French</u>, 101 Wn. App. 380, 4 P.3d 857 (2000) (prosecutor's statement that "defense has given you absolutely no reason to be able to conclude the defendant didn't do this" did not create incurable prejudice). Moreover, Pope raised the identical claim in his statement of additional grounds in the direct appeal, and this court rejected it.

Dkt. 12-2 at 189-90.

9

10

11

12

13

14

15

16

17

18

  On appeal, Petitioner's counsel argued Petitioner was denied a fair trial because the prosecutor engaged in misconduct by citing facts not in the evidence, vouching for her witness, expressing her personal opinions, and issuing emotional appeals. Dkt. 12-1 at 463. Further, in Petitioner's Statement of Additional Grounds for Review, Petitioner argued the prosecutor erred in commenting on his failure to testify. *Id*. at 559, 581-83. The state court of appeals denied counsel's claims of prosecutorial misconduct and summarily denied Petitioner's claim regarding the prosecutor's comments on Petitioner's failure to testify. Dkt. 12-1 at 625-29. The state court of appeals found Petitioner's claim that the prosecutor engaged in misconduct by commenting on his failure to testify was not supported by the record. *Id*. at 629.

19

20

21

22

23

  Petitioner was able to raise a prosecutorial misconduct claim based on the prosecutor allegedly commenting on Petitioner's decision not to testify. The state court of appeals denied this claim because it was not supported by the record. Petitioner has not shown that if appellate counsel would have raised this specific prosecutorial misconduct claim the result would have been different.

24

1    Petitioner's appellate counsel raised prosecutorial misconduct claims on appeal. Further,

2   on direct appeal, Petitioner alleged the prosecutor engaged in misconduct when she commented

3   on Petitioner's failure to testify and the claim was denied. Petitioner has not shown his appellate

4   counsel's decision was unreasonable or that the outcome of his appeal or collateral attack would

5   have changed had counsel, not Petitioner, raised the claim on appeal. Therefore, Petitioner has

6   not shown he was prejudiced by his counsel's failure to raise a claim of prosecutorial misconduct

7   based on the prosecutor commenting on Petitioner's failure to testify.

8    For these reasons, Petitioner has not shown the state court's conclusion that appellate

9   counsel did not render ineffective assistance by failing to raise a claim of prosecutorial

10  misconduct based on the prosecutor commenting on Petitioner's failure to testify on appeal was

11  contrary to, or an unreasonable application of, clearly established federal law. Therefore, Ground

12  7 should be denied.

13        4.  *Conclusion*

14    Petitioner has failed to show his appellate counsel's performance was deficient or that he

15  was prejudiced by her decisions on appeal. As such, Petitioner has not shown the state court's

16  conclusion that appellate counsel did not render ineffective assistance was contrary to, or an

17  unreasonable application of, clearly established federal law. Therefore, Grounds 5 – 7 should be

18  denied.

19    D.  Cumulative Error (Ground 8)

20    In Ground 8, Petitioner alleges the errors articulated in Grounds 1 – 7 denied Petitioner

21  his constitutional right to due process and a fair trial. Dkt. 18 at 20; Dkt. 29 at 34-37. "The

22  Supreme Court has clearly established that the combined effect of multiple trial court errors

23  violates due process where it renders the resulting criminal trial fundamentally unfair." *Parle v.*

24

1    *Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) (citing *Chambers v. Mississippi*, 410 U.S. 284, 298,

2    302-03 (1973). However, cumulative error only warrants habeas relief when the errors have "so

3    infected the trial with unfairness as to make the resulting conviction a denial of due process."

4    *Parle*, 505 F.3d at 927 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Thus, the

5    essential questions a habeas court must consider when evaluating a claim of cumulative error are:

6    1) whether the combined effect of trial errors rendered a criminal defense "far less persuasive;" and

7    2) whether the combined errors therefore had a "substantial and injurious effect or influence" on

8    the jury verdict. *Parle*, 505 F.3d at 928.

9        In resolving Petitioner's claim of cumulative error, the state court of appeals determined:

10       Pope argues cumulative error requires reversal of his convictions. Under the
         cumulative error doctrine, a defendant may be entitled to a new trial when several
11       trial errors cumulatively produced a fundamentally unfair trial. State v. Coe, 101
         Wn.2d 772, 789, 684 P.2d 668 (1984). Absent prejudicial error, there can be no
12       cumulative error that deprived the defendant of a fair trial. State v. Stevens, 58 Wn.
         App. 478, 498, 794 P.2d 38 (1990). Pope has not demonstrated that prejudicial error
13       deprived him of a fair trial.

14   Dkt. 12-2 at 190.

15       As discussed in Sections II.B. & C., above, Petitioner has failed to demonstrate any

16   prejudicial error; thus, there is no basis to conclude the cumulative impact of these alleged errors

17   caused prejudice. *See Thompson v. Calderon*, 109 F.3d 1358, 1369 (9th Cir. 1997, *as amended*

18   Mar. 6, 1997), *rev'd on other grounds*, 523 U.S. 538, 566 (1998) ("Finding no prejudice from the

19   errors taken separately, we also find no cumulative prejudice."). At most, the evidence shows the

20   prosecutor made a misstatement of the evidence in her closing argument regarding E.S's phone

21   battery, but that error was not prejudicial. In sum, "there are not multiple errors to accumulate and

22   the cumulative error doctrine does not apply." *Chavez v. Uttecht*, 2020 WL 2113768 at *4 (W.D.

23   Wash. May 4, 2020).

24

1    Petitioner has failed to demonstrate the state court's resolution of his claim of cumulative

2    error was unreasonable. Therefore, Petitioner has not shown the state court's conclusion that there

3    was no cumulative error was contrary to, or an unreasonable application of, clearly established

4    federal law. Accordingly, Ground 8 should be denied.

5    **III.    Evidentiary Hearing**

6        The decision to hold an evidentiary hearing is committed to the Court's discretion.

7    *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a

8    hearing could enable an applicant to prove the petition's factual allegations, which, if true, would

9    entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is

10    available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the

11    state court. *Cullen*, 563 U.S. at 181-82. A hearing is not required if the allegations would not

12    entitle Petitioner to relief under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the

13    record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district

14    court is not required to hold an evidentiary hearing." *Id*. The Court does not find it necessary to

15    hold an evidentiary hearing because, as discussed in this Report and Recommendation,

16    Petitioner's grounds for relief may be resolved on the existing state court record.

17    **IV.    Certificate of Appealability**

18        A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

19    court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

20    from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability may issue

21    . . . only if the [petitioner] has made a substantial showing of the denial of a constitutional right."

22    28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason

23    could disagree with the district court's resolution of his constitutional claims or that jurists could

24

1  conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-*

2  *El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

3        No jurist of reason could disagree with this Court's evaluation of Petitioner's claims or

4  would conclude the issues presented in the Second Amended Petition should proceed further.

5  Therefore, the Court concludes Petitioner is not entitled to a certificate of appealability with

6  respect to the Second Amended Petition.

7  **V.    Conclusion**

8        For the above stated reasons, the Court concludes Petitioner has not shown the state

9  courts' adjudication Grounds 1 – 8 was contrary to, or an unreasonable application of, clearly

10  established federal law. The Court also finds an evidentiary hearing is not necessary. Therefore,

11  the Court recommends the Second Amended Petition be denied and a certificate of appealability

12  not be issued.

13        Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

14  fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

15  6. Failure to file objections will result in a waiver of those objections for purposes of de novo

16  review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

17  imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

18  February 18, 2022, as noted in the caption.

19        Dated this 1st day of February, 2022.

20

21                                                     David W. Christel

22                                                     United States Magistrate Judge

23

24